**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| JORDAN and KATHLEEN FLYNT, | § | |
| | § | |
| Plaintiffs, | § | CIVIL ACTION NO. 4:23-CV-00327-SDJ- |
| | § | AGD |
| v. | § | |
| | § | |
| COLEMAN WORLDWIDE MOVING, | § | |
| LLC, ET AL., | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION & ORDER</u>

Pending before the court is Plaintiffs Jordan Flynt and Kathleen Flynt's Motion to Remand (Dkt. #7) and Defendants Coleman Worldwide Moving, LLC, Coleman American Moving Services, Inc., and Allied Van Lines' Motion to Dismiss (Dkt. #4). After reviewing Plaintiffs' Motion to Remand (Dkt. #7), Defendants' Response (Dkt. #12), Plaintiffs' Reply (Dkt. #13), Defendants' Sur-Reply (Dkt. #14), Defendants' Motion to Dismiss (Dkt. #4), Plaintiffs' Response (Dkt. #8), Defendants' Reply (Dkt. #11), and all other relevant filings, the court finds that the Motion to Remand (Dkt. #7) should be granted. The court further finds that Defendants' Motion to Dismiss (Dkt. #4) should be denied as moot in light of the remand order.

## BACKGROUND

### *Factual Background*

Defendants are moving service companies hired by Plaintiffs for their move from Texas to Kansas (Dkt. #3). Plaintiffs' claims arise out of Defendants' alleged failure to arrive to move Plaintiffs' belongings as scheduled (Dkt. #3). On April 27, 2022, Plaintiffs and Defendants entered into an Estimate and Order for Service Agreement ("the Agreement") that Defendants would arrive at Plaintiffs' residence in Lewisville, Texas on July 18, 2022, and load Plaintiffs' belongings

(Dkt. #1, Exhibit 2 at pp. 11–15). Defendants would then deliver Plaintiffs' belongings to Plaintiffs' new residence in Manhattan, Kansas between July 19, and July 27, 2022 (Dkt. #1, Exhibit 2 at p. 11). Plaintiffs allege that Defendants never arrived on July 18, 2022, and that Defendants "admitted to improperly calendaring" Plaintiffs' move (Dkt. #3 at p. 3). Plaintiffs allege that, as a result of Defendants' misrepresentations,

> Plaintiffs were forced to make other arrangements leading to a delayed move out and additional fees to set up a rush move out with alternative company, being forced to move out without power and air conditioning in the summer heat of Texas. Further, the Plaintiffs had to rearrange various delivery and installation appointments at their new home, causing weeks [of] delays for some of their appointments and missed work.

(Dkt. #3 at pp. 3–4). On October 11, 2022, Plaintiffs sent Defendants a demand letter for $9,630.63 in damages (Dkt. #1, Exhibit 2 at pp. 17–19).

***Procedural History***

On December 29, 2022, Plaintiffs filed suit in the 431st District Court in Denton County, Texas (Dkt. #1 at p. 1). On April 5, 2023, Plaintiffs filed their First Amended Petition (Dkt. #3). On April 14, 2023, Defendants filed a Notice of Removal (Dkt. #1). On April 18, 2023, Defendants filed the present Motion to Dismiss Plaintiffs' Amended Petition (Dkt. #4). On May 9, 2023, Plaintiffs moved to remand the case to the 431st District Court in Denton County, Texas, which is also pending before the court (Dkt. #7). Both motions are fully briefed.

**Defendants' Motion to Dismiss**

In their Motion to Dismiss, Defendants first argue that Defendants Coleman American Moving Services, Inc. and Coleman Worldwide Moving, LLC are disclosed household good agents under 49 U.S.C. § 13907, and as such, cannot be held liable for the actions of their principal, Defendant Allied Van Lines, Inc. (Dkt. #4 at pp. 4–7). Next, Defendants argue that the Carmack Amendment completely preempts Plaintiffs' state and common law claims because Plaintiffs'

claims arise from "services related to" the movement of Plaintiffs' property from Texas to Kansas (Dkt. #4 at p. 11). Further, Defendants argue that while Plaintiffs are not seeking compensation for loss or damage to goods, the Carmack Amendment nonetheless applies because Plaintiffs seek damages for the delay in the delivery of their goods (Dkt. #12 at p. 15).

In response, Plaintiffs distinguish the cases cited by Defendants, arguing that in each case, the carriers had actually received goods, while here, Defendants never arrived to pick up Plaintiffs' goods (Dkt. #8 at pp. 3–5). Plaintiffs urge the court to adopt the holding in *Counter v. United Van Lines*, 935 F. Supp. 505 (D. Vt. 1996) (Dkt. #8 at pp. 4–5). In *Counter*, the Vermont District Court held that the Carmack Amendment did not apply when the carrier wholly failed to pick up the plaintiff's goods for transportation. *Counter*, 935 F. Supp. at 506. Plaintiffs do not respond to Defendants' arguments regarding the liability of Defendants Coleman American Moving Services, Inc. and Coleman Worldwide Moving, LLC. *See* (Dkt. #8).

In reply, Defendants argue that Plaintiffs "mischaracterize the law" because Defendants engaged in interstate transportation as defined in 49 U.S.C. § 13102(23) regardless of the fact that Defendants did not receive Plaintiffs' goods (Dkt. #11 at pp. 2–4). Defendants further argue that *Counter* conflicts with Supreme Court, Fifth Circuit, and Texas federal court precedent (Dkt. #11 at pp. 7–8).

**Plaintiffs' Motion to Remand**

In their Motion to Remand, Plaintiffs first argue that the court should remand the case because Defendants' notice of removal was untimely (Dkt. #7 at pp. 3–5). Specifically, Plaintiffs allege that Defendants "disingenuously claim they were unaware that Plaintiffs were seeking in

excess of $10,000[1] until email correspondence between counsel on March 30, 2023" because Plaintiffs' Original Petition sought $9,630.63 plus statutory damages, exemplary damages, and attorneys' fees (Dkt. #7 at pp. 3–4).

In response, Defendants argue that Plaintiffs rely on the incorrect legal standard because the present case is a timeliness dispute (Dkt. #12 at pp. 1–2). Thus, under the standard for timeliness disputes, Defendants argue that their removal was timely because Plaintiffs' Petition did not "affirmatively reveal on its face" that Plaintiffs were seeking damages in excess of $10,000 (Dkt. #12 at pp. 2–3). Instead, Defendants argue, they removed within thirty days of Plaintiffs' March 30, 2023, email, which was the first time Plaintiffs "affirmatively reveal[ed]" the amount in controversy (Dkt. #12 at pp. 2–3).

In reply, Plaintiffs concede that this presents a timeliness dispute, wherein the correct legal standard is whether the initial pleading "affirmatively reveal[s] on its face" that the amount in controversy exceeds $10,000 (Dkt. #13 at pp. 1–2). However, Plaintiffs argue that Defendants removal was nonetheless tardy, stating that "Defendants seem to take the position that the Original Petition failed to affirmatively reveal on its face that Plaintiffs were seeking over $10,000 because the multiplication was not done for them." (Dkt. #13 at p. 2)

In their Sur-Reply, Defendants argue that the Fifth Circuit's rule regarding timeliness disputes is a bright line rule, and here, Plaintiffs' "initial pleading does not contain a 'specific allegation' that damages are in excess of the federal jurisdictional amount." (Dkt. #14 at p. 2).

Next, Plaintiffs argue that the court does not have subject-matter jurisdiction pursuant to a federal question because Plaintiffs' claims are not preempted by the Carmack Amendment

---

1 "[T]he district courts shall have original jurisdiction of an action brought under [the Carmack Amendment] only if the matter in controversy for each receipt or bill of lading exceeds $10,000, exclusive of interest and costs." 28 U.S.C. § 1337(a).

(Dkt. #7 at pp. 5–8). Plaintiffs argue that because their Amended Petition removes any claims for damage to their goods and instead seeks damages for Defendants' failure to move Plaintiffs' goods, the Carmack Amendment does not apply (Dkt. #5 at p. 8). Plaintiffs further argue that, if the court finds that the Carmack Amendment applies, Plaintiffs will not be able to make out a prima facie case under the Carmack Amendment because the first element is proof of the delivery of the goods to the carrier in good condition, and Plaintiffs' claims are based on Defendants' failure to pick up Plaintiffs' belongings (Dkt. #7 at pp. 6–7).

In response, Defendants incorporate and put forth the same arguments as their Reply in support of their Motion to Dismiss (Dkt. #12 at pp. 4–11). In reply, Plaintiffs argue that "Defendants fail to cite a single case extending Carmack Amendment preemption to a party that ultimately had no participation in the move" (Dkt. #13 at p. 3). In their Sur-Reply, Defendants counter that "Defendants cited numerous cases where the Carmack Amendment applies to premove conduct because they constituted transportation services" (Dkt. #14 at p. 5) (emphasis omitted).

## LEGAL STANDARD

### *Removal and Remand*

When questions of federal jurisdiction arise, a federal court must presume that a suit falls outside its jurisdiction, because the jurisdiction of federal courts is limited. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). A defendant may remove "any civil action brought in a [s]tate court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). The removing party bears the burden of establishing federal jurisdiction. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Any doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction. *Acuna v. Brown &*

*Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). Moreover, a district court is required to remand the case to state court if, at any time before final judgment, it determines that it lacks subject-matter jurisdiction. *See* 28 U.S.C. § 1447(c); *Groupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004).

The timing of removal is controlled by 28 U.S.C. § 1446, which provides that if a suit is removable when the initial pleading is filed, the defendant must file the notice of removal within thirty days after service of the initial pleading. 28 U.S.C. § 1446(b)(1); *Bd. of Regents v. Nippon Tel. & Tel. Corp*., 478 F.3d 274, 278 (5th Cir. 2007). However, "the thirty-day clock is not triggered unless the initial pleading 'affirmatively reveals on its face' that the plaintiffs sought damages exceeding the jurisdictional amount." *Mumfrey v. CVS Pharm., Inc.*, 719 F.3d 392, 400 (5th Cir. 2013) (citation omitted). If the suit is not initially removable, a defendant may remove the lawsuit within thirty days after the defendant's receipt of a copy of an amended pleading, motion, order, or other paper from which the defendant can ascertain that the case has become removable. 28 U.S.C. § 1446(b)(3); *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 532 (5th Cir. 2006). Likewise, "[a] motion to remand the case on the basis of any defect other than lack of subject-matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1447(c).

### Subject-Matter Jurisdiction

A federal court may have subject-matter jurisdiction in two ways: federal question or diversity. 28 U.S.C. §§ 1331, 1332. In this case, Defendants allege that the court has federal question jurisdiction because Plaintiffs' claims arise under a federal statute: the Carmack Amendment (Dkt. #1 at p. 4).

**Federal Question Jurisdiction**

Federal question jurisdiction exists when a case or controversy arises under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. The presence or absence of federal question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998). When a plaintiff's pleadings set forth only state law claims, a federal district court has federal question jurisdiction to entertain the action only if "(1) the state law claims necessarily raise a federal issue or (2) the state law claims are completely preempted by federal law." *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008). A defense which raises a federal question or that is based on federal law is insufficient to establish subject-matter jurisdiction. *Caterpillar v. Williams*, 482 U.S. 386, 392–93 (1987). As is relevant here, a well-pleaded complaint alleging claims that arise under the Carmack Amendment may establish federal subject-matter jurisdiction. *See* 28 U.S.C. §§ 14706, 1337.

**The Carmack Amendment**

In 1906, Congress enacted the Carmack Amendment to create a uniform national policy regarding an interstate carrier's liability for property loss or damage. *N.Y., New Haven & Hartford R.R. Co. v. Nothnagle*, 346 U.S. 128, 131 (1953). The Carmack Amendment statutorily limits recovery for damage to the property itself as well as imposes "liability upon the carrier for all reasonably foreseeable consequential damages resulting from a breach of the contract of carriage, including those resulting from nondelivery of the shipped goods as provided by the bill of lading." *Air Prods. & Chems., Inc. v. Ill. Cent. Gulf R.R. Co.*, 721 F.2d 483, 485 (5th Cir. 1983) (citations omitted).

The Carmack Amendment has a "broad reach," and as a general matter, "preempts state law claims arising out of the shipment of goods by interstate carriers." *Heniff Transp. v. Trimac Transp.*, 847 F.3d 187, 190 (5th Cir. 2017) (citation omitted). Courts have noted a "dearth of legislative history regarding the Carmack Amendment." *See, e.g.*, *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 776 (5th Cir. 2003) (citation omitted). Even so, the Supreme Court characterized the Interstate Commerce Act, which encompasses the Carmack Amendment, as "among the most pervasive and comprehensive of federal regulatory schemes" ever enacted by Congress. *Chi. & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 318 (1981).

The Carmack Amendment provides, in relevant part, as follows:

(1) Motor Carriers and Freight Forwarders. – A carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or 105 are liable to the person entitled to recover under the receipt or bill of lading.

49 U.S.C. § 14706(a)(1). To establish a prima facie case for recovery under the Carmack Amendment, a plaintiff must demonstrate "(1) the delivery of goods in good condition to the carrier; (2) receipt by the shipper of less goods or damaged goods; and (3) the amount of damages." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc*., 738 F.3d 703, 706 (5th Cir. 2013). "If the shipper establishes a prima facie case, there is a rebuttable presumption of negligence." *Id.* However, the Carmack Amendment also incorporates common law principles for calculation of damages. *Nat'l Hispanic Circus, Inc. v. Rex Trucking, Inc.*, 414 F.3d 546, 552–53 (5th Cir. 2005). These principles include, but are not limited to, "the market value test that measures damages by the diminution in the goods' value between the time of dispatch and the time of actual delivery"

and lost rental value. *Hector Martinez & Co. v. S. Pac. Transp. Co.*, 606 F.2d 106, 110 (5th Cir. 1979).

## ANALYSIS

While courts have described the Carmack Amendment as "pervasive," "broadly construed," and "far-reaching," it is not limitless. This case represents such a limit, because under the narrow facts of this case, Plaintiffs' claims do not arise under the plain language of the Carmack Amendment, nor do they implicate its purpose. Additionally, the Carmack Amendment caselaw is extensive but factually distinct from the case at hand. As such, the court holds that under these specific facts, Plaintiffs' claims do not arise under the Carmack Amendment. Consequently, the court does not have subject-matter jurisdiction and the case must be remanded.

### I.   *The court does not have subject-matter jurisdiction.*

At the outset, the court notes that when it is presented with both a jurisdictional challenge and a motion to dismiss pursuant to "Rule 12(b)(6), the [c]ourt should address the jurisdictional question first." *Carmouche v. Nat'l Flood Ins. Program*, No. CV 17-11479, 2018 WL 5279121, at *2 (E.D. La. Oct. 24, 2018) (citing *Hitt v. Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). This is because federal courts are courts of limited jurisdiction and must therefore "affirmatively ascertain subject-matter jurisdiction before adjudicating a suit." *Sawyer v. Wright*, 471 F. App'x 260, 261 (5th Cir. 2012) (per curiam). Here, Defendants removed the case alleging that the court has federal question jurisdiction because Plaintiffs' claims arise under the Carmack Amendment (Dkt. #1 at p. 4).[2] Accordingly, the court first considers Plaintiffs' Motion to Remand to determine whether the exercise of removal jurisdiction is proper in this case. In doing so, the court finds that it does

---

[2] No Party alleges subject-matter jurisdiction via diversity.

not have subject-matter jurisdiction because the Carmack Amendment does not apply to Plaintiffs' claims.

### a.  Plain Language of the Carmack Amendment

#### i.  *"Receiving Carrier"*

Plaintiffs argue that the "plain language of the Carmack Amendment shows that it applies to carriers that 'issue a receipt or bill of lading for property it *receives* for transportation…and any other carrier that delivers the property and is providing transportation or service.'" (Dkt. #7 at p. 6) (quoting 49 U.S.C. § 14706(a)(1)). Defendants disagree that "receives" governs the Carmack Amendment's applicability, and instead quote additional language from section 14706: "That carrier and *any other carrier* that delivers the property and *is providing transportation or service* and is subject to jurisdiction under subchapter I or III of chapter 135 or 105 are liable to the person entitled to recover under the receipt or bill of lading." (Dkt. #12 at p. 8) (quoting 49 U.S.C. § 14706(a)). Because the Parties' arguments mainly consist of quotations of the same statute with different words emphasized, the court first sets out the relevant section in whole:

> (1) Motor Carriers and Freight Forwarders. – A carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or 105 are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading and, except in the case of a freight forwarder, applies to property reconsigned or diverted under a tariff under section 13702. Failure to issue a receipt or bill of lading does not affect the liability of a carrier. A delivering carrier is deemed to be the carrier performing the line-haul transportation nearest the destination but does not include a carrier providing only a switching service at the destination.

49 U.S.C. § 14706(a)(1).

The statute sets out three categories of carriers that may be potentially liable under the Carmack Amendment when a shipper suffers a loss: "(A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported[.]" *Id.*; *see Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 101 (2010) (setting out the same categories in the rail carrier context). A receiving carrier is "[a] carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135." 49 U.S.C. § 14706(a)(1). The statute commands that the receiving carrier "shall issue a receipt or bill of lading for property it receives for transportation." *Id.* However, "[f]ailure to issue a receipt or bill of lading does not affect the liability of a carrier." *Id.*

Next, a delivering carrier is "any other carrier that delivers the property and is providing transportation or service" and "is deemed to be the carrier performing the line-haul transportation nearest the destination but does not include a carrier providing only a switching service at the destination." *Id.* Finally, the statute refers to "another carrier over whose line or route the property is transported[.]" *Id.*

Here, the court first notes that Defendants do not fall into the third category of "another carrier over whose line or route the property is transported" because Plaintiffs' claims do not arise from their property being transported over Defendants' "line or route."

Next, the court agrees with Plaintiffs that Defendants also do not fit in the "receiving carrier" category. Neither "receive" or "receiving carrier" is defined in the statute. *See* 49 U.S.C. § 13102. Both common sense and the dictionary definition of "receive" dictate that a carrier may not be a "receiving carrier" if it wholly fails to receive any property. *See Receive*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("To take (something offered, given, sent, etc.); to come into possession of or get from some outside source[.]"). And, while failure to issue a bill of lading does

not affect the liability of the receiving carrier, the "decisive question is not whether the rail carrier in fact issued a Carmack bill but rather whether that carrier was required to issue a bill[.]" *See Kawasaki*, 561 U.S. at 103 (explaining that Carmack did not apply where no carrier received the property for "domestic rail transportation"). Critically, "Carmack applies only to transport of property for which Carmack requires a receiving carrier to issue a bill of lading, regardless of whether that carrier erroneously fails to issue such a bill." *Id.* at 103–04.

Here, the failure to take possession of Plaintiffs' property necessarily means that Defendants are not "receiving carriers," and as such, Defendants were not required to issue a bill of lading. Defendants concede as much in their Answers: "Defendants affirmatively plead that Plaintiffs did not tender and Defendants did not accept Plaintiffs' household goods for transport, and thus, cannot be liable for loss and/or damage to household goods." (Dkt. #1, Exhibit 14 at p. 2; Dkt. #1, Exhibit 15 at p. 2). The Agreement between the Parties is also demonstrative on this point because it indicates that Defendants intended to issue a bill of lading upon receipt of Plaintiffs' property. *See, e.g.*, (Dkt. #1, Exhibit 2 at p. 11) ("I request that Allied Van Lines, Inc. furnish the services described in this order, subject to the terms and conditions of the Allied Van Lines, Inc. household goods bill of lading issued at the time Allied Van Lines, Inc. takes possession of this shipment."). Put differently, Defendants did not "erroneously fail[] to issue such a bill," but instead did not issue a bill of lading because they did not receive Plaintiffs' property. *See Kawasaki*, 561 U.S. at 103 ("[F]or Carmack's provisions to apply, the journey must begin with a receiving rail carrier, which would have to issue a Carmack-compliant bill of lading.").[3] As such, Defendants are not receiving carriers such that Plaintiffs' claims arise under the Carmack Amendment.

---

[3] Section 1337, the statute that promulgates the amount in controversy requirement for Carmack Amendment actions, also contemplates Carmack Amendment liability only for carriers required to issue a bill of lading: "[T]he district

Finally, Defendants do not qualify as "delivering carrier[s]." Section 14706(a) defines "delivering carrier" as "the carrier performing the line-haul transportation nearest the destination but does not include a carrier providing only a switching service at the destination." 49 U.S.C. § 14706(a)(1). The statute does not define line-haul transportation or switching service, but in any event, Defendants do not argue that they were "performing line-haul transportation" or "providing only a switching service." Defendants do, however, argue that they qualify as "*any other carrier* that delivers the property and *is providing transportation or service*[.]" (Dkt. #12 at p. 8) (quoting 49 U.S.C. § 14706(a)).[4]

Defendants do not qualify as "delivering carriers" because they did not deliver Plaintiffs' property. In section 14706(a), the statute uses "and" to connect "any other carrier that delivers the property" with a carrier that is "providing transportation or service." 49 U.S.C. § 14706(a). It is a well settled canon of statutory construction that "and" is conjunctive. *Trammell Crow Residential Co. v. Am. Prot. Ins. Co.*, 574 F. App'x 513, 518 (5th Cir. 2014) (citation omitted); *see ConocoPhillips Co. v. EPA*, 612 F.3d 822, 839 (5th Cir. 2010) ("Nouns joined by coordinating conjunctions are usually treated as a single, compounded unit[.]"). There are some scenarios where "and" is interchangeable with "or," but only "where strict grammatical construction will frustrate clear legislative intent." *Bruce v. First Fed. Sav. & Loan Ass'n of Conroe, Inc.*, 837 F.2d 712, 715 (5th Cir. 1988). Such is not the case here; construing a "delivering carrier" as a carrier that "is providing transportation or service" without delivering the property would frustrate both common

---

courts shall have original jurisdiction of an action brought under [the Carmack Amendment] only if the matter in controversy for each receipt or bill of lading exceeds $10,000, exclusive of interest and costs." 28 U.S.C. § 1337(a).

[4] The court also notes that Defendants' arguments tellingly conflict with one another. In Defendants' Answers, Defendants "affirmatively plead" that Defendants are "not liable for damages, whether direct, incidental, special[,] or consequential arising from the shipment made the basis of this action." (Dkt. #1, Exhibit 14 at p. 2; Dkt. #1, Exhibit 15 at p. 3). On the other hand, the thrust of Defendants' Motion to Dismiss and responsive pleadings to Plaintiffs' Motion to Remand is that Defendants were involved in the transportation of Plaintiffs' belongings to such a degree that the Carmack Amendment supersedes Plaintiffs' state law claims.

sense and "clear legislative intent." *Id.* Accordingly, a delivering carrier must both deliver the property and provide a transportation or service. 49 U.S.C. § 14706(a)(1). Here, as explained below, the court disagrees with Defendants' contention that they were engaged in "transportation or service," and the crux of Plaintiffs' lawsuit is that Defendants did not receive or deliver Plaintiffs' possessions. *See* discussion, *infra*, Section I.a.ii. Therefore, Defendants' conduct does not arise under the plain language of the Carmack Amendment.

Because the Supreme Court has engaged in similar statutory interpretation of the Carmack Amendment, a deeper dive into *Kawasaki* is warranted. In that case, the shipper brought its cargo to the "K" Line vessels in China. *Kawasaki*, 561 U.S. at 94. The vessels transported the cargo from China to California, where the cargo was then transferred onto a Union Pacific train. *Id.* at 95. However, the train derailed in Oklahoma, destroying the cargo. *Id.* The shipper sued, and the Court considered whether, in the rail carrier context, "Carmack applies to the inland segment of an overseas import shipment under a through bill of lading." *Id.* "A through bill of lading covers both the ocean and inland portions of the transport in a single document." *Id.* at 94 (citation omitted). As is relevant here, the through bill of lading contained a forum selection clause. *Id.*

The Court held that the terms of the bill of lading controlled, and that the Carmack Amendment did not apply to "a shipment originating overseas under a single through bill of lading." *Id.* at 100. In its analysis, the Court delineated the same three categories of carrier that apply in the motor carrier context: 1) receiving carrier, 2) delivering carrier, or 3) connecting carrier. *Id.* With respect to a receiving carrier, the Court set out two requirements based on the text of the statute: "First, the rail carrier must 'provid[e] transportation or service subject to the jurisdiction of the [Surface Transportation Board].'" Second, that carrier must "receiv[e]" the

property "for transportation under this part[.]" *Id.* at 101.[5]  In other words, "[a] receiving rail carrier is the initial carrier, which 'receives' the property for domestic rail transportation at the journey's point of origin." *Id.* Accordingly, the Court held that because "K" Line received the goods in China, and thus did not receive goods "for domestic rail transportation," "K" Line was "not a receiving rail carrier under Carmack and was not required to issue a bill of lading under that amendment." *Id.* at 111. As such, the Court found that the Carmack Amendment did not supersede the forum selection clause in the bill of lading. *Id.*

Importantly, the Court also pointed out that "[t]he Court of Appeals interpreted Carmack as applying to any domestic rail segment of an overseas shipment, regardless of whether Carmack required a bill of lading." *Id.* at 105. The Court explained that the Court of Appeals' holding was erroneous because

> Carmack applies only to shipments for which Carmack requires a bill of lading; that is to say, to shipments that start with a carrier that is both subject to the [Surface Transportation Board]'s jurisdiction and "receives [the property] for [domestic rail] transportation." The Court of Appeals ignored this "receive[d] ... for transportation" limitation and so reached the wrong conclusion.

*Id.* Likewise, here, Defendants urge the court to ignore the "receives for transportation" limitation in section 14706(a). Moreover, Defendants admit that they did not "receive" Plaintiffs' property for transportation (Dkt. #1, Exhibit 14 at p. 2; Dkt. #1, Exhibit 15 at p. 2). As such, because Defendants are not receiving carriers, nor do they fall under any other category of carrier, the Carmack Amendment does not apply.

---

[5] "The provision 'this part' refers to is the [Surface Transportation Board]'s jurisdiction over rail transportation within the United States. The STB is the successor to the Interstate Commerce Commission." *Id.* at 97 (citation omitted).

ii. *"Transportation"*

Defendants further argue that by entering into the Agreement with Plaintiffs, they were providing "services related to" the movement of property such that Defendants' conduct fell under the definition of "transportation." (Dkt. #4 at p. 11; Dkt. #12 at p. 5). Defendants assert that "'[t]ransportation' is not, as Plaintiffs imply, limited exclusively to the physical movement of property. It covers all carrier services, pre-move, during, and post-move." (Dkt. #12 at p. 6). For instance, Defendants argue, "Plaintiffs allege that Defendants entered into a contract with Plaintiffs to transport their property interstate; Defendants communicated with Plaintiffs regarding scheduling of transportation; and Defendants calendared Plaintiffs' move-out." (Dkt. #4 at p. 11).

Pursuant to 49 U.S.C. § 13102(23), [t]he term transportation includes

(A) a motor vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, regardless of ownership or an agreement concerning use; and

(B) services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property.

Defendants' conduct does not neatly fit into the definition of "transportation" under 49 U.S.C. § 13102(23). First, Defendants cite no cases where merely entering a contract of carriage is deemed to be a "service[] related to" the movement of property. *See* (Dkt. #4; Dkt. #11; Dkt. #12; Dkt. #14). And, even if Defendants' conduct generally constituted a "service," Defendants did not provide any service "related to *that* movement" as required by subpart B. 49 U.S.C. § 13102(23)(A)–(B) (emphasis added). In subpart A, the statute refers to "the movement" to describe "the movement of passengers or property, or both." *Id.* In subpart B, the statute refers to "that movement," seemingly referencing the specific movement established in subpart A. *Id.* at § 13102(23)(B). It is a well-established rule that "courts must give effect, if

possible, to every clause and word of a statute." *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1890 (2019); *see United States v. Lauderdale Cnty., Miss.*, 914 F.3d 960, 966 (5th Cir. 2019) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."). Here, while Plaintiffs hired a different company to move their belongings (Dkt. #3 at p. 3), Defendants admit that they took no part in "*that* movement" (Dkt. #1, Exhibit 14 at p. 2; Dkt. #1, Exhibit 15 at p. 2). Accordingly, even if Defendants' supposed "service" constituted "arranging for" Plaintiffs' move, that arrangement was not ultimately "related to *that* movement" i.e. the actual movement of Plaintiffs' property. Defendants' Answers bolster this conclusion. Each Defendant "affirmatively plead[s] that Plaintiffs did not tender and Defendants did not accept Plaintiffs' household goods for *transport*[.]" (Dkt. #1, Exhibit 14 at p. 2; Dkt. #1, Exhibit 15 at p. 2) (emphasis added). Thus, Defendants conduct does not fall under the definition of "transportation" in 49 U.S.C. § 13102(23).

One of the cases cited by Defendants, *Heniff*, is illustrative of this point. According to Defendants, "[l]iability under the Carmack Amendment ... extends beyond the carrier who actually provides the transportation. It extends to any carrier 'providing transportation or service.'" (Dkt. #12 at p. 7) (citing *Heniff*, 847 F.3d at 192) (emphasis omitted). However, *Heniff* does not stand for the proposition that merely entering a contract of carriage constitutes a "service" under the Carmack Amendment.

In *Heniff*, the Fifth Circuit was analyzing whether a party who improperly cleaned a tanker but was not named in the bill of lading can be liable under the Carmack Amendment, not whether a party who is wholly absent from the transportation can be liable under the Carmack Amendment.

*Heniff*, 847 F.3d at 191.[6] The Carmack Amendment applied there because cleaning the tanker was a service completed in anticipation of interstate transportation that actually occurred, and thus, was a service related to the interstate movement of property. *Id.* at 191. Indeed, the failure to properly clean the tanker before using it to transport a chemical caused the shipper's damages. *Id.* at 188–89. Here, unlike *Heniff*, Defendants' Agreement with Plaintiffs does not constitute a "service[] related to *that* movement" as required by 49 U.S.C. § 13102(23). Accordingly, Defendants conduct does not fall under the definition of "transportation" in 49 U.S.C. § 13102(23).

### b. Defendants' Caselaw

Defendants argue that courts broadly construe the Carmack Amendment, noting that the Supreme Court held that the Carmack Amendment applies to "all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination." (Dkt. #12 at p. 5) (citing *N.Y., Phila. & Norfolk R.R. Co. v. Peninsula Produce Exch. of Md.*, 240 U.S. 34, 38 (1916)). In response, Plaintiffs point out that "Defendants cite no cases where a party failed to show up or otherwise participate in the transportation of goods and federal law preempted the claim." (Dkt. #13 at p. 3). Plaintiffs are correct that each of the cases Defendants rely upon is distinguishable from the case at hand.

#### i.    *The United States Supreme Court*

Defendants rely on *Adams Express Co.* and *Atchison* for the conclusion that "the whole 'subject of interstate shipments' is regulated by Congress." (Dkt. #4 at p. 8). However, Defendants' Supreme Court caselaw is distinguishable from the facts at hand.

---

[6] *Heniff* is also an example of a case where "failure to issue a receipt or bill of lading does not affect the liability of a carrier," discussed above. *See* discussion, *supra*, Section I.a.i.

In *Adams Express Co.*, the plaintiff brought suit against a moving company that took possession of a package containing a diamond ring but never delivered the package. *Adams Express Co. v. Croninger*, 226 U.S. 491, 492 (1913). The Court held that the plaintiff's claims arose under the Carmack Amendment and stated that "[t]he duty to issue a bill of lading, and the liability thereby assumed, are covered in full; and though there is no reference to the effect upon state regulation, it is evident that Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been theretofore subject." *Id.* at 506. Conversely, here, Defendants did not have a duty to issue a bill of lading because Defendants never received Plaintiffs' property for transport. *See* discussion, *supra*, I.a.i.

Likewise, in *Atchison*, a plaintiff sued a common carrier to recover the freight cost of corn lost through a damaged train car door. *Atchison, Topeka & Santa Fe Ry. Co. v. Harold*, 241 U.S. 371, 373–74 (1916). The Court, in holding that "the court below erred in applying the local law to the interstate commerce shipment," explained that the Carmack Amendment's "prime object was to bring about a uniform rule of responsibility as to interstate commerce and interstate commerce bills of lading[.]" *Id.* at 378–79. While the court agrees that the purpose of the Carmack Amendment is to create uniformity in interstate carriers' liability, that purpose is not implicated by the facts at hand because, unlike the defendants in *Atchison*, Defendants herein never received Plaintiffs' property for transport, and consequently did not issue a bill of lading. *Atchison* is thus distinguishable from the case at hand.

Another case cited by Defendants, *Peninsula Produce*, is likewise inapposite to this case. There, a shipper sued a carrier after it delivered a shipment of strawberries "some hours later than the customary time of arrival[.]" *Peninsula Produce Exch. of Md.*, 240 U.S. at 36. The Court held that the shipper's delay claims were governed by the Carmack Amendment because "[t]he words

'any loss, damage, or injury to such property' caused by the initial carrier or by any connecting carrier, are comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination." *Id.* at 38. Even so, as established above, Defendants herein did not provide interstate transportation or any other service related to Plaintiffs' move. *See* discussion, *supra*, Section I.a.ii.  As such, Defendants' liability is not governed by the Carmack Amendment.

### ii.    Federal Circuit Courts

Defendants go on to argue that "every circuit court that has addressed [complete preemption] has come to the same conclusion." (Dkt. #4 at p. 9). However, each of the cases cited by Defendants is distinguishable because here, Defendants never retrieved Plaintiffs' items and, consequently, did not issue a bill of lading. *See Air Prods. & Chem., Inc.*, 721 F.2d at 487 (explaining that the Carmack Amendment applied when the carrier breached its duty by misdelivering a tank car as provided in the bill of lading); *Intech v. Consol. Freightways*, 836 F.2d 672, 674, 677 (1st Cir. 1987) (explaining that the Carmack Amendment applied when machinery was shipped under a bill of lading but never delivered because a dispute arose over which party was responsible for unloading the shipment); *Cleveland v. Beltman N. Am. Co.*, 30 F.3d 373, 381 (2d Cir. 1994) (explaining that the Carmack Amendment was the shipper's sole remedy when the shipper's possessions were damaged during shipment under a bill of lading); *Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700, 706–07 (4th Cir. 1993) (stating that "the United States Supreme Court has long interpreted the Carmack Amendment as manifesting Congress' intent to create a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading" when analyzing the loss of a shipper's goods due to a fire at the storage facility); *Baker Perkins, Inc. v. Midland Moving & Storage Co.*, 920 F.2d 1301, 1306 (6th Cir.

1990) (holding that "parole evidence was admissible to show what the Transportation Agreement actually meant" when shippers goods were damaged by a flood during the course of transportation); *Underwriters at Lloyds of London v. D Lux Van Lines*, 890 F.2d 1112, 1121 (10th Cir. 1989) (en banc) ("[T]he Carmack Amendment preempts state common law remedies against common carriers for negligent loss or damage to goods shipped under a lawful bill of lading.").

Moreover, one of the cases cited by Defendants, *Gordon*, is distinguishable as well as contradictory to Defendants' position. In *Gordon*, after the plaintiff's personal items were incinerated instead of delivered, the court held that "the Carmack Amendment does not preempt those state law claims that allege liability on a ground that is separate and distinct from the loss of, or the damage to, the goods that were shipped in interstate commerce." *Gordon v. United Van Lines, Inc*., 130 F.3d 282, 285, 289 (7th Cir. 1997); *see Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 382 (5th Cir. 1998) (arriving at the same conclusion). The court went on to explain that ". . . Congress has commanded through the Carmack Amendment that [the carrier] must be sheltered from liability except insofar as it may also engage in conduct that is sufficiently distinct from the contract of carriage that a separate and independent claim arises." *Id.* at 290. Here, Plaintiffs allege Defendants are liable "on a ground that is separate and distinct from the loss of, or the damage to, the goods that were shipped in interstate commerce[,]" specifically that Defendants wholly failed to retrieve or transport Plaintiffs' goods. Defendants' federal circuit caselaw is thus factually distinguishable from the case at hand.

### iii.      *The Fifth Circuit*

Next, Defendants rely on *Hoskins* and *Moffit* to argue that "Congress' intent in enacting the Carmack Amendment was to ensure the uniform application of liability of motor carriers

traveling between states[.]" (Dkt. #4 at p. 9). However, Defendants' Fifth Circuit caselaw is also distinguishable from the case at hand.

In *Hoskins*, the plaintiff paid a moving company to store and then move her personal items. *Hoskins*, 343 F.3d at 771. Upon delivery, the plaintiff noted that some of her items were damaged or missing and filed suit to recover for the losses. *Id.* In affirming the district court's decision, the court held that complete preemption applies to Carmack Amendment cases, and "that Congress intended for the Carmack Amendment to provide the exclusive cause of action for loss or damages to goods arising from the interstate transportation of those goods by a common carrier." *Id.* at 778 (emphasis omitted).

Likewise, in *Moffit*, the plaintiffs entered an agreement with a moving company to move the plaintiffs' items to their new home in time for Christmas. *Moffit v. Bekins Van Lines Co.*, 6 F.3d 305, 305–06 (5th Cir. 1993). The plaintiffs brought suit after the plaintiffs' items did not arrive in time for the holiday because the moving company tardily shipped the plaintiffs' goods. *Id.* at 506. The court held that "the district court correctly held that federal law, via the Carmack Amendment, preempts the Moffits' state law claims. To hold otherwise would only defeat the purpose of the statute, which was to create uniformity out of disparity." *Id.* at 307.

The court notes that the facts of the case at hand do not implicate the purpose of the Carmack Amendment. In both *Hoskins* and *Moffit*, the carrier received the plaintiffs' property for transport and issued a bill of lading. *Moffit*, 6 F.3d at 307; *Hoskins*, 343 F.3d at 771. Here, unlike *Hoskins* and *Moffitt*, the carriers never received Plaintiffs' property.

Defendants rely on additional Fifth Circuit cases for the conclusion that the Carmack Amendment preempts Plaintiffs' state law claims (Dkt. #4 at pp. 10–11) which are distinguishable on the same grounds. In *Transmaritime, Inc.*, the plaintiff sued two shipping companies after they

lost nearly 2,000 boxes of Christmas lights shipped under a bill of lading from China to Mexico. *Transmaritime, Inc*., 738 F.3d at 704. However, "Transmaritime did not issue a bill of lading covering the shipment to or from Long Beach. Instead, the individual shippers subcontracted by Transmaritime issued their own bills of lading to send the cargo from California to Laredo, Texas." *Id.* at 707 n. 24. The Fifth Circuit explained that a copy of Customs Form 7512 did not carry the same weight as a bill of lading to prove that the plaintiff delivered the Christmas lights to the carrier in good condition. *Id.* at 708. Accordingly, because there was a genuine issue of material fact as to whether the plaintiff delivered the goods to the carrier, the court reversed summary judgment in the plaintiff's favor. *Id.* Notably, the *Transmaritime, Inc.* holding pertains to the evidence required to establish a prima facie case of Carmack Amendment liability at the summary judgment stage, not whether the Carmack Amendment preempted a plaintiff's state law claims. *Id.* In any event, *Transmaritime, Inc.*, unlike the present case, involves facts where a carrier allegedly lost the plaintiff's items during shipment under a bill of lading, and is thus distinguishable on that ground as well.

Next, in *Tran Enterprises*, the carrier, DHL, "failed to remit collect-on-delivery (COD) payments totaling $21,991.72 to Nutrition Depot." *Tran Enters., LLC v. DHL Express (USA), Inc.*, 627 F.3d 1004, 1007 (5th Cir. 2010). "Of these twenty-one shipments, the evidence shows that DHL collected COD checks for only ten. Of the remaining eleven shipments, one check was not collected because DHL failed to deliver the goods altogether, and the remaining ten checks simply were not collected by DHL's employees upon delivery of the merchandise." *Id.* In holding that the Carmack Amendment preempts claims stemming from the carrier's alleged failure to remit COD payments, the Fifth Circuit explained that "the Supreme Court and Fifth Circuit have found preemption not only in cases where there was actual damage to the goods shipped, but also when

there has been 'any failure to discharge a carrier's duty with respect to any part of the ***transportation*** to the agreed destination.'" *Id.* at 1008 (listing cases) (emphasis added).

Here, Plaintiffs do not allege that their items were damaged during transportation but complain instead that Defendants did not transport their items ***at all***. As established above, Defendants' conduct did not constitute "transportation" because Defendants did not move or provide a service related to the actual movement of Plaintiffs' property. *See* discussion, *supra*, Section I.a.ii. And, because Defendants never arrived to retrieve Plaintiffs' items, Defendants did not issue a bill of lading. Conversely, in *Tran Enterprises*, all twenty-one shipments were transported under a bill of lading. *Id.*  Moreover, *Tran Enterprises* involves a carrier's failure to remit COD payments either because the shipment was retrieved but never delivered or because DHL's employees neglected to collect a check upon delivery. *Id.* at 1007. In other words, the Carmack Amendment applied there because collecting COD payments was a service related to interstate transportation that actually occurred, and thus, was a service related to the interstate movement of property. Therefore, *Tran Enterprises*, as well as the rest of Defendants' Fifth Circuit case law, is distinguishable from the facts at hand.

### iv.   *Federal District Courts*

Next, Defendants argue that "Texas federal district courts have uniformly recognized the broad preemption of the Carmack Amendment and have rejected similar attempts by parties to sidestep Carmack preemption by asserting state statutory and common law causes of action." (Dkt. #4 at pp. 9–10). However, like Defendants' circuit court caselaw, each of the federal district court cases is distinguishable because here, Defendants did not receive Plaintiffs' items or issue a bill of lading. *See Von Der Ahe v. 1-800-Pack-Rat, LLC*, 597 F.Supp.3d 1051, 1057–58 (N.D. Tex. 2022) (finding that the Carmack Amendment applied when the plaintiff's items were shipped

pursuant to a contract but delivery of the items was late and many valuable items were missing); *Shamoun v. Old Dominion Freight Line, Inc*., No. 3:19-CV-2034-G, 2020 WL 570903, at \*6 (N.D. Tex. Feb. 4, 2020) (applying the Carmack Amendment when the plaintiff shipped medallions under a bill of lading but an employee of the shipping company put the medallions in the trash); *Federated Mut. Ins. Co. v. XPO Logistics Freight, Inc*., No. 21-CV-315-RP, 2021 WL 4621965, at \*3 (W.D. Tex. Oct. 6, 2021) (holding that all of the plaintiff's claims stemming from the damage to a countertop during its shipment under a bill of lading arose under the Carmack Amendment); *Khalil v. Mayflower Transit, LLC*, No. CV H-19-1368, 2019 WL 2355148, at \*2 (S.D. Tex. June 4, 2019) (dismissing the plaintiff's state law claims for damage to items during shipment under a bill of lading because the claims were preempted by the Carmack Amendment); *Matrix Chem., LLC v. Fedex Freight, Inc.*, No. 4:15-CV-779, 2016 WL 260948, at \*2 (E.D. Tex. Jan. 21, 2016) (holding, without a recitation of facts, that removal was proper because the Carmack Amendment falls in the purview of the complete preemption doctrine); *Visram v. Darryl Flood Warehouse & Movers, Inc.*, No. Civ.A. H-05-0469, 2006 WL 305802, at \*1–2 (S.D. Tex. Feb. 8, 2006) (holding that the Carmack Amendment applied when the defendants agreed to ship the plaintiff's belongings immediately after retrieval, but instead, the defendants picked up the items and stored them in a warehouse where the plaintiff's property was damaged); *Marks v. Suddath Relocation Sys.*, Inc., 319 F. Supp. 2d 746, 750 (S.D. Tex. 2004) ("The dispositive fact is that all of their claims are based on allegations that Suddath damaged and/or lost property whose transportation and storage was governed by an interstate bill of lading. Such claims are completely preempted and therefore involve a federal question."); *Kimmel v. Bekins Moving & Storage Co.*, 210 F. Supp. 2d 850, 853 (S.D. Tex. 2002) (denying a motion to remand when the defendant picked up the plaintiff's belongings pursuant to the bill of lading but delivered them two days late with several

items damaged or missing). Therefore, each of the federal district court cases Defendants relied upon is distinguishable because Defendants did not receive Plaintiffs' items for transportation.

v.      *Counter v. United Van Lines*

In response to Defendants' caselaw, Plaintiffs urge the court to instead follow the District of Vermont's analysis in *Counter*. There, the plaintiffs contacted a moving service to discuss the possibility of moving the plaintiff's belongings from Vermont to Virginia. *Counter*, 935 F. Supp. at 506. The plaintiffs met with the moving company to discuss the specifics of the move and communicated that it was critical for the moving company to complete the move on April 12, 1995. *Id.* On the morning of April 12, 1995, the company informed plaintiffs that it would not provide the moving services unless the plaintiffs paid an additional $3,000. *Id.* The moving company represented that it required the additional payment for several reasons, including that the crew would have to shuttle the plaintiffs' personal property to the moving van with a small truck, that the company had underestimated the weight of the shipment, and that the crew was not as experienced as the company had promised. *Id.* The plaintiffs could not afford the additional charges and, consequently, the company did not move the plaintiff's belongings *Id.* Additionally, the plaintiffs could not close on the sale of their Vermont home or the purchase of the house in Virginia. *Id.*

The plaintiffs brought claims for fraud, consumer fraud, intentional infliction of emotional distress, negligent misrepresentation, and breach of contract. *Id.* Additionally, the plaintiffs sought damages for the lost sale of their home, the time spent preparing for their move to Virginia, expenses incurred in being unable to close on the Virginia property, the loss of Mr. Counter's employment, and medical expenses related to the treatment of their emotional distress. *Id.* The

defendants removed and then moved to dismiss the case on the theory that the Carmack Amendment preempted the plaintiffs' state law claims. *Id.* The plaintiffs moved to remand. *Id.*

The court agrees with Plaintiffs that *Counter* is directly on point. The question presented is nearly identical to the case at hand: "whether the Carmack Amendment preempts state law claims of fraud, breach of contract[,] and intentional infliction of emotional distress by a prospective shipper against a carrier who did not issue a bill of lading, and never shipped any goods." *Id.* at 508. The *Counter* Court, in holding that the Carmack Amendment does not apply to the plaintiffs' claims, emphasized that

> Plaintiffs do not allege that defendants lost or damaged their goods in the course of transporting them. Indeed, the crux of plaintiffs' complaint is that defendants failed to transport their goods. Defendants never took possession of plaintiffs' property, and plaintiffs never obtained a receipt or bill of lading. Plaintiffs' property was not shipped interstate; it was never picked up and was never shipped anywhere.

*Id.* Further, the court notes, "[t]he purpose of the Carmack Amendment was to limit a shipper's recovery to the actual loss or injury to transported goods. In the instant case, there was no loss or injury to the property itself, and the property was never transported." *Id.* Likewise, here, Plaintiffs are not alleging "a loss or injury to the property itself," but seek damages flowing from Defendants' failure to receive Plaintiffs' property for transportation.

Defendants argue that the court's adoption of *Counter* would conflict with Supreme Court, Fifth Circuit, and Texas federal court precedent (Dkt. #11 at pp. 7–8). However, as established above, each case applying the Carmack Amendment is factually distinguishable from this case. *See* discussion, *supra*, Section I.b.i–iv. Conversely, the facts in *Counter* align precisely with the facts at hand. As such, following *Counter* does not conflict with precedent because the specific facts of this case present a narrow question of first impression in this court.

Defendants further assert that "courts in the Second Circuit (where Vermont is located) have expressly held otherwise." (Dkt. #12 at p. 9). However, the cases to which Defendants are referring do not expressly hold otherwise and are factually distinguishable from both *Counter* and the case at hand.

First, in *Shields*, the plaintiff hired a moving company to transport her belongings from Connecticut to Maryland. *Shields v. United Van Lines*, No. 3:21CV01287(SALM), 2021 WL 5832984, at *1 (D. Conn. Dec. 9, 2021). The defendants arrived at the plaintiff's residence as scheduled and took possession of her belongings. *Id.* The plaintiff later realized her jewelry was missing and filed suit against the moving company for "(1) Statutory Theft; (2) Conversion; (3) violation of the Connecticut Unfair Trade Practices Act ('CUTPA'); (4) Negligent Infliction of Emotional Distress; and (5) Negligent Hiring, Training, and Supervision." *Id.* The defendant moving company removed the case to federal court, and the plaintiff moved to remand, arguing "that her claims are not preempted by the Carmack Amendment because: (1) the claims alleged in the Complaint 'do not fall within the ambit of federal regulation[;]' and (2) the jewelry at issue 'was not on the bill of lading contract, nor did it ever leave the State of Connecticut.'" *Id.* at *2. The court held that because "[e]ach of plaintiff's state law claims arises from the loss of her jewelry during the course of an interstate move[,]" the plaintiff's claims were completely preempted by the Carmack Amendment. *Id.* at *3. The court explained that "the failure to issue a receipt or bill of lading does not affect the liability of the carrier[,]" and as such, the fact that the jewelry was not listed on the bill of lading is immaterial to whether Carmack applies. *Id.* (quoting 49 U.S.C. § 14706(a)(1)).

As analyzed in detail above, Defendants in this case did not issue a bill of lading because Defendants did not pick up Plaintiffs' belongings, and as such, were not "receiving carriers" under

49 U.S.C. § 14706(a)(1). *See* discussion, *supra*, Section I.a.i. In *Shields*, the defendants seemingly transported all the plaintiff's belongings except the jewelry, and in those circumstances, the *Shields* Court correctly concluded that the failure to issue a receipt or bill of lading for an item lost or stolen during transport does not affect the liability of the carrier. *See* 49 U.S.C. § 14706. The court went on to explain that "because the plaintiff alleges that the theft occurred during the loading and packing portion of her interstate move, whether the jewelry ever left Connecticut is irrelevant to the question of preemption under the Carmack Amendment." *Shields*, 2021 WL 5832984, at *3. Similarly, here, whether Plaintiffs' belongings ever left Texas is not the operative fact; indeed, Plaintiffs' belongings were eventually transported from Texas to Kansas by a different carrier (Dkt. #3 at p. 3). But, unlike *Shields*, Defendants did not transport any of Plaintiffs' property, and thus Defendants' conduct does not come into the purview of the Carmack Amendment.

Likewise, in *Brody*, the question of whether the property was transported interstate or not was immaterial to the Carmack Amendment analysis. There, the plaintiffs contracted with a moving company to move their belongings from New York to Florida, as well as store some items in New York. *Brody v. Liffey Van Lines, Inc.*, No. 13CV05719(CM), 2014 WL 2450807, at *1 (S.D.N.Y. May 29, 2014). Several months later, the plaintiffs requested that the moving company transport some of their belongings in storage from New York to Florida. *Id.* The moving company removed the belongings from storage and delivered them to Allied Van Lines for transportation to Florida. *Id.* Upon arrival, the plaintiffs' belongings were damaged. *Id.* The court held that "[t]o the extent that Liffey picked up the goods that eventually ended up in Florida at plaintiffs' New York City apartment, stored and delivered them to Allied for transit, its activities plainly fall within the ambit of the Carmack Amendment." *Id.* at *4. The court went on to explain that "where multiple carriers are responsible for different legs of a generally continuous shipment, the determination as

to whether Carmack applies is based on the intended final destination of the shipment as that intent existed *when the shipment commenced*." *Id.* at *5 (emphasis added); *see N. Marine Underwriters, Ltd. v. FBI Exp., Inc.*, No. CIV.A. H-08-2549, 2009 WL 7326068, at *3 (S.D. Tex. Apr. 20, 2009) ("Whether the Amendment applies is determined by the intended final destination of the shipment at the time the shipment is commenced."). Notably, while here, Plaintiffs' intention at the outset was for Defendants to ship their belongings from Texas to Kansas, the Defendants never *commenced* such shipment. As such, Plaintiffs' interstate intention at the time they entered the Agreement is immaterial as to whether the Carmack Amendment applies to Defendants' conduct.

Finally, in *Consolidated Rail Corporation*, the parties entered a series of contracts governing the shipment of coal from mines. *Consol. Rail Corp. v. Primary Indus. Corp.*, 868 F. Supp. 566, 569 (S.D.N.Y. 1994). "All contracts were made expressly subject to the loss and damage provisions of the Uniform Straight Bill of Lading." *Id.* at 570. After shipments commenced, Conrail announced that it was closing one of the piers that had been receiving shipments. *Id.* at 570. Conrail subsequently brought suit to recover unpaid shipping charges from Primary Coal, and Primary Coal counterclaimed to recover delay damages resulting from Conrail's closure of the pier. *Id.* at 571. Neither party disputed that the Carmack Amendment governed the shipping contracts. *Id.* at 573. In determining the preemption issue, the court held that Carmack preempts state law claims of interference with contract or interference with prospective economic advantage because the claims "seek damages flowing from shipment agreements." *Id.* at 574.

The court pauses to note that, like *Consolidated Rail Corporation*, Plaintiffs seek damages flowing from Defendants' alleged breach of the Agreement. However, *Consolidated Rail Corporation* is factually distinguishable from the case at hand. Here, Plaintiffs' damages are not "subject to the loss and damage provisions of the Uniform Straight Bill of Lading." Indeed,

Defendants never issued a bill of lading because they never received Plaintiffs' property for transportation. Furthermore, the Uniform Straight Bill of Lading in *Consolidated Rail Corporation* stated that "claims must be filed in writing with the receiving or delivering carrier[,]" which, as established above, Defendants are neither receiving nor delivering carriers. *See* discussion, *supra*, Section I.a.i. And, in *Consolidated Rail Corporation*, the carrier had received and delivered a number of shipments prior to closing the pier, while here, Defendants never received or transported any of Plaintiffs' property. *Id.* at 570. Finally, unlike this case, neither party in *Consolidated Rail Corporation* disputed that the Carmack Amendment governed the parties' contracts. *Id.* at 573.

Defendants go on to argue that "numerous courts distinguishing the *Counter* case have expressly held that the Vermont state court found the shippers' claims in that case not preempted by Carmack because the household goods were never shipped in interstate commerce by any motor carrier." (Dkt. #12 at p. 9) (emphasis omitted). In doing so, Defendants cite to *Consolidated Rail Corporation*, which does not discuss *Counter*, nor does it promulgate the holding asserted by Defendants.[7]

Even so, the cases that do distinguish *Counter* are inapposite to the case at hand. Two of the cases conflict with Fifth Circuit precedent,[8] and each mainly references the procedural applicability of complete preemption generally, not whether the Carmack Amendment applies to the facts presented. *See Ben & Jerry's Homemade, Inc. v. KLLM, Inc.*, 58 F. Supp. 2d 315, 319

---

[7] Plaintiffs also correctly point out that "any motor carrier" is added by Defendants but not found in *Consolidated Rail Corporation*. *See Consol. Rail Corp.*, 868 F. Supp. 566. And, to Defendants' point, it is not clear from the facts of *Counter* whether the plaintiffs' goods were eventually shipped by a different motor carrier. *See Counter*, 935 F. Supp. 505. In any event, the conduct of a motor carrier not named in a lawsuit is immaterial to whether the Carmack Amendment applies.

[8] According to *Ben & Jerry's*, complete preemption does not necessarily provide for removal jurisdiction. *Ben & Jerry's Homemade*, 58 F. Supp. 2d at 319. Conversely, in the Fifth Circuit, a defendant may remove on the basis of complete preemption alone if the requirements of the federal statute are otherwise met. *See Hoskins*, 343 F.3d at 775.

(D. Vt. 1999) (explaining that *Counter* was overbroad when the court stated in dictum that "a complaint claiming loss or damage to shipped goods would have been properly removed under the complete preemption doctrine"); *Bear MGC Cutlery Co., Inc. v. Estes Exp. Lines, Inc.*, 132 F. Supp. 2d 937, 939 (N.D. Ala. 2001) (referencing *Ben & Jerry's* analysis of the complete preemption dictum in *Counter*). The third case, *United Traffic Consultants*, is also inapplicable. There, the defendant cited *Counter* to show that the Carmack statute of limitations applies only to recovery by common carriers. *United Traffic Consultants, Inc. v. Gordon Trucking, Inc.*, No. Civ. 02–328–JE, 2003 WL 21397697, at *3 (D. Or. Mar. 25, 2003). However, the court found that defendant's reliance on *Counter* was misplaced because *Counter* did not involve unpaid transportation charges and was thus factually distinct. *Id.* Accordingly, the cases that distinguish *Counter* do not foreclose remand.

For the reasons above, and erring in favor of remand, the court finds that, under the specific facts of this case, it does not have subject-matter jurisdiction because the Carmack Amendment does not apply to Plaintiffs' claims.[9]

## II.   *Attorneys' Fees*

Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *Am. Airlines, Inc. v. Sabre, Inc.*, 694 F.3d 539, 541–42 (5th Cir. 2012). However, "[t]here is no automatic entitlement to an award of attorney's fees." *Id.* (quoting *Valdes v. Wal–Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000) (holding that the "mere determination that removal was improper" does not require a district court to award attorney's fees)). Instead, a court "may award

---

[9] Because the court is ordering that this case be remanded, the court does not reach the issue of whether Defendants Coleman American and Coleman Worldwide are proper defendants in this litigation.

attorney's fees when the removing party lacks an objectively reasonable basis for removal." *Id.* at 542.

Plaintiffs argue that the court should award Plaintiffs' costs, expenses, and attorney's fees because the "Original Petition clearly showed that Plaintiffs were seeking in excess of $10,000[,]" and thus "removal of this case was not objectively reasonable." (Dkt. #7 at p. 5). Defendants respond that "in light of the myriad of cases cited in support of Defendants' removal, there is an objectively reasonable basis for the removal of this case to federal court." (Dkt. #12 at p. 10).[10]

Plaintiffs' request for attorneys' fees requires the court to determine whether Defendants' Notice of Removal was timely and thus objectively reasonable.[11] Plaintiffs argue that Defendants "disingenuously claim they were unaware that Plaintiffs were seeking in excess of $10,000 until email correspondence between counsel on March 30, 2023" because Plaintiffs' Original Petition sought $9,630.63 plus statutory damages, exemplary damages, and attorneys' fees (Dkt. #7 at pp. 3–4). Defendants argue that their removal was timely because Plaintiffs' complaint did not "affirmatively reveal on its face" that Plaintiffs were seeking damages in excess of $10,000, and Defendants removed within 30 days of Plaintiffs' March 30, 2023, email (Dkt. #12 at pp. 2– 3).

The court finds that Defendants' removal was timely, and as such, Defendants had an objectively reasonable basis for removal. In a timeliness dispute, the 30-day removal period is triggered only where the initial pleading affirmatively reveals on its face that the plaintiff is seeking damages more than the minimum jurisdictional amount of the federal court. *Mumfrey*, 719 F.3d at

---

[10] In their Motion to Dismiss, Defendants also argue that the Carmack Amendment preempts state statutes allowing the court to award attorneys' fees (Dkt. #4 at pp. 13–14). However, because the court finds that the Carmack Amendment does not apply, the question is not whether Plaintiffs are entitled to attorneys' fees pursuant to the Carmack Amendment, but whether Plaintiffs are entitled to attorneys' fees as a consequence of the court remanding the case.

[11] Because Plaintiffs only allege that removal was objectively unreasonable based on the amount in controversy, the court does not address the reasonableness of other potential grounds for removal.

399 (citation omitted); *see*, *e.g.*, *Decatur Hosp. Auth. v. Aetna Health, Inc.*, 854 F.3d 292, 298 (5th Cir. 2017) (affirming the award of attorneys' fees because the defendant's removal was not objectively reasonable when the defendant removed more than five months after the deadline based on information affirmatively stated in the complaint). Here, while Plaintiffs are correct that Defendants could reasonably assume Plaintiffs' claims exceeded the jurisdictional threshold, Plaintiffs' pleadings did not affirmatively reveal that fact. *See* (Dkt. #3). Therefore, Defendants' removal within 30 days of Plaintiffs' March 30, 2023, email was timely. Because Defendants' removal was timely, it was objectively reasonable, and thus, Plaintiffs are not entitled to attorneys' fees.

## CONCLUSION

For the foregoing reasons, the court holds that Plaintiffs Jordan Flynt and Kathleen Flynt's Motion to Remand (Dkt. #7) is **GRANTED** and the instant lawsuit is **REMANDED** to the 431st Judicial District Court of Denton County, Texas. The court further holds that Defendants' Motion to Dismiss (Dkt. #4) is **DENIED** as moot in light of the remand order. It is further **ORDERED** that Plaintiff's request for attorney's fees is **DENIED**. It is finally **ORDERED** that any relief not addressed herein is **DENIED**. The clerk of court is directed to immediately transmit this case to the 431st Judicial District Court of Denton County, Texas. The clerk of court shall close this case.

**IT IS SO ORDERED.**

**SIGNED this 28th day of March, 2024.**

AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE